UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NORTHERN INSURANCE
COMPANY OF NEW YORK,

    Plaintiff,

v.

Case No. 14-cv-13458
Hon. Matthew F. Leitman

TARGET CORPORATION *et al.*,

    Defendants.

_____/

**OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (ECF #56) AND DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF #58)**

This action involves an insurance coverage dispute. The dispute arises out of a liability policy (the "Policy") that Plaintiff Northern Insurance Company of New York ("Northern") issued to Walsay, Inc. ("Walsay"). Defendants Target Corporation and Target Stores, Inc. (together, "Target") contend that they are entitled to coverage under the Policy for a personal injury tort claim brought against them in a separate lawsuit.[1] Target argues that it is entitled to coverage because (1) the Policy requires Northern to cover tort liability that Walsay has

---

[1] For ease of reference, the Court refers to "Target" in the singular form for the remainder of this Opinion and Order.

1

assumed and (2) Walsay assumed Target's tort liability for the personal injury claim at issue.

The parties have now filed cross-motions for summary judgment. (*See* ECF ## 56, 58.) For the reasons explained below, the Court concludes that Target is not entitled to coverage under the Policy. Accordingly, the Court **GRANTS** Northern's motion for summary judgment and **DENIES** Target's motion for summary judgment.

I

A

Northern originally filed this action against Target, Walsay, and a third Defendant, Home Niches, Inc. ("Home Niches"). In order to understand the dispute before the Court, it is essential to understand (1) the relationship between the three original Defendants and (2) their respective connections to Northern. The Court begins with those relationships. (Because the relationships can be difficult to follow, the Court has inserted at page 10 below a diagram that reflects the relationships in a format that, hopefully, makes them easier to understand.)

Home Niches is a distributor of household products. For several years, Home Niches distributed pop-up laundry hampers to Target. Target then sold the hampers at its retail stores. Home Niches supplied the laundry hampers to Target pursuant to a contract entitled the "Partners Online Agreement." Target and Home

Niches entered into that agreement on December 12, 2004. (*See* ECF #58-3 at 1, 9, Pg. ID 1681, 1689.) As relevant here, the Partners Online Agreement provided that Home Niches would indemnify and/or defend Target for liabilities arising from products manufactured or supplied by Home Niches. More specifically, the Partners Online Agreement stated that Home Niches would

> defend, indemnify and hold harmless Purchaser [Target], its parent, affiliates, agents and employees from and against all liability, claims, suits, actions, losses and expenses . . . relating to or arising out of any claim or demand of any nature, which any buyer . . . may make against [Target], based upon or arising out of the manufacture, . . . sale or use of [consumer goods supplied by Home Niches].

(*Id.* at 13, Pg. ID 1693.)

Toward the end of 2010, "Home Niches[] wound down its day to day [sic] business of selling products to Target . . . ." (*See* Defs.' Counter Compl. at ¶ 5, ECF #21 at 2-3, Pg. ID 946-47.) Walsay then apparently acquired Home Niches or assumed a number of Home Niches' business relationships with various retailers, including Target. (*See id.*; *see also Neal v. Target Corp.*, 2016 WL 3365432, at *1 (N.D. Ill. June 15, 2016).)

On March 11, 2011, Walsay and Home Niches executed a contract in which Walsay assumed Home Niches' duties to Target under the Partners Online Agreement (the "Assumption Agreement"). (*See* ECF #58-4 at 1, Pg. ID 1698.) The Assumption Agreement provided as follows:

3

Vendor [Home Niches] and Walsay [Assignee] acknowledge and agree that:

(1) Vendor hereby assigns to Assignee all of its right, title and interest in and to its account with Target.

(2) Assignee will assume and be directly liable to Target with respect to all claims, liabilities, and other amounts owed by Vendor to Target as of the date of the assignment or arising from transactions between Vendor and Target prior to the date of the assignment ("Existing Liabilities").

(3) In the event Assignee fails to pay the Existing Liabilities, Vendor will pay such amounts directly to Target.

(4) Assignee will be solely responsible with respect to all claims, liabilities, and other amounts owed by Assignee to Target that are incurred following the date of assignment.

(5) As part of the above assignment, Vendor is transferring to Assignee its [Partners Online Agreement] registration. As such, Assignee agrees that it is subject to the terms and conditions relating to such registration, including the agreement that all business conducted by Assignee with Target is in accordance with the terms, conditions and other provisions set forth in [the Partners Online Agreement] including, without limitation, the Conditions of Contract.

(*Id.*)

At the time Walsay entered into the Assumption Agreement with Home Niches, Walsay was insured under a liability insurance policy it had previously purchased from Northern (the above-defined "Policy"). (*See* ECF #1-3 at 14, Pg. ID 39.) Walsay remained insured under the Policy at all times relevant to this action. (*See id.* at ECF #1-4 at 2, Pg. ID 160; ECF #58-5 at 1, Pg. ID 1699.)

Among other things, the Policy provided coverage for damages that Walsay was obligated to pay for certain bodily injuries. The Policy stated, in pertinent part, that

> We [Northern] will pay those sums that the insured [Walsay] becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.

(*See* ECF #58-5 at 1, Pg. ID 1699.)

**B**

On July 20, 2012, Keon Reeves ("Reeves"), a minor, allegedly suffered an eye injury while using a pop-up hamper that his mother, Angela Neal ("Neal"), had purchased from Target. (*See* ECF #1-2 at 4, Pg. ID 19.) On July 17, 2013, Angela Neal filed a products-liability action on behalf of her son in an Illinois state court seeking to recover damages for his eye injury (the "Underlying Lawsuit"). (*See id*

5

at 2, Pg. ID 17.) Neal named Target, Home Niches, and Walsay as defendants. (*See id.*)

Target, Home Niches, and Walsay removed the Underlying Lawsuit to the United States District Court for the Northern District of Illinois. (*See* ECF #58-2 at 2, Pg. ID 1668.) Upon removal, Target filed cross-claims seeking indemnification for its tort liability to Reeves. First, Target contended that Home Niches was liable for its (Target's) tort liability to Reeves under the indemnification provision of the Partners Online Agreement. Second, Target alleged that Walsay was liable for its (Target's) tort liability because, in the Assumption Agreement, Walsay assumed Home Niches' indemnification obligations under the Partners Online Agreement. (*See id.* at 8-12, Pg. ID 1674-78.)

Target ultimately settled with Neal, but it continued to pursue its cross-claims against Home Niches and Walsay. The federal court in Illinois ruled in favor of Target on those claims. It entered a final order entitling Target "to recover from [Home] Niches and Walsay all sums Target [owed] to Plaintiff in settlement of her claim . . . . [and] all attorneys' fees and costs incurred in its defense." (*See Neal*, 2016 WL 3365432, at *1.) It appears, however, that Target was unable to collect those amounts from Home Niches and/or Walsay. (*See id.* at *4.)

Target then set its sights on collecting under the Policy, and it sought indemnification from Northern. Target contended that the Policy required

6

Northern to satisfy Walsay's obligation to indemnify Target. (*See* Target's Ans. to Am. Compl. at ¶ 5, ECF #15 at 2, Pg. ID. 914.) Northern did not indemnify Target. Instead, Northern filed this declaratory judgment action. Northern seeks a declaration of its obligations, if any, under the Policy to satisfy Walsay's obligation to indemnify Target for Neal's claim (on behalf of Reeves). (*See generally* Am. Compl., ECF #14.) The parties have now filed cross-motions for summary judgment.

### C

Northern contends that it has no obligation to satisfy Walsay's duty to indemnify Target because that obligation is excluded from coverage under the Policy. Northern relies upon an exclusion in the Policy that precludes coverage for bodily injury liability that Walsay incurred by virtue of a contract (the "Contractual Liability Exclusion"):

> This insurance does not apply to:
> \*\*\*
> b.    Contractual Liability
>
> "Bodily Injury" or "property damage" for which the insured is obligated to pay by reason of the assumption of liability in a contract or agreement.

(Policy, ECF #58-5 at 2, Pg. ID 1700.) Northern says that the Contractual Liability Exclusion precludes coverage here because Walsay's obligation to indemnify

7

Target for its tort liability to Reeves arose from a *contract* – i.e., the Assumption Agreement in which Walsay assumed Home Niches' indemnification obligations. (*See* Northern's Mot. Summ. J., ECF #56 at 19, Pg. ID 1561.)

Target concedes that its claim falls within the Contractual Liability Exclusion,[2] but it nonetheless contends that the exclusion does not bar coverage. Target insists that its claim for indemnification fits within an exception to the exclusion. That exception provides that Northern must satisfy a Walsay liability that would otherwise fall within the exclusion if Walsay incurred the liability through "a contract or agreement that is an 'insured contract'" (the "Insured Contract Exception"). (Policy, ECF #58-5 at 2, Pg. ID 1700.) The Walsay Policy defines "insured contract" as, among other things, "[t]hat part of any other contract or agreement pertaining to your business . . . under which you assume the tort liability of another party to pay for 'bodily injury' . . . ." (*Id*. at 14, Pg. ID 1712.)

Target argues that the Insured Contract Exception applies here. (*See* Target's Mot. Summ. J., ECF #56 at 12, Pg. ID 1656.) Target contends that Walsay incurred its liability to Target through the Assumption Agreement and the Partners Online Agreement, and Target insists that those agreements amount to an "insured contract." Target's argument that those agreements constitute an "insured

---

[2] At the hearing before the Court on August 4, 2016, Target's counsel acknowledged that the Contractual Liability Exclusion applies and that the sole issue for the Court to decide here is whether Target's claim is covered by an exception to that exclusion.

8

contract" is as follows: (1) in the Partners Online Agreement, Home Niches agreed to indemnify Target for Target's tort liability; (2) in the Assumption Agreement, Walsay assumed Home Niches' obligation to indemnify Target for its tort liability; and (3) Walsay thus "assume[d the] tort liability" of Target – and thereby formed an "insured contract" for purposes of the Policy – when it executed the Assumption Agreement.

The parties have set forth their competing positions in the pending cross-motions for summary judgment. At the hearing on those motions, both parties agreed that there are no material factual disputes underlying their dispute and that the Court may decide the contested issue as a matter of law based upon the parties' papers. The dispositive question for the Court to answer is: do the Assumption Agreement and the Partners Online Agreement amount to an "insured contract" such that Northern must satisfy Walsay's obligation under those agreements to indemnify Target for Target's tort liability to Reeves?

The diagram on the following page displays the relationships between the parties as described in text above and is provided to help the reader better understand these relationships:

```
NORTHERN INSURANCE                          THE POLICY
                                            • Coverage for "bodily injury"
                                            • Contractual Liability Exclusion
         Walsay Is Covered Under Policy       precludes coverage for liability
         Issued by Northern Insurance         assumed in contract
                                            • But coverage still available in
                                              certain circumstances if the Insured
                                              Contract Exception applies
                                            • Insured Contract Exception applies
                                              where Walsay assumes tort
         WALSAY                                liability of another party


         Walsay and Home Niches Are Parties    ASSUMPTION AGREEMENT
         to the Assumption Agreement         • Walsay assumed Home Niches'
                                              contractual indemnification
                                              obligations to Target under the
                                              Partners Online Agreement

         HOME NICHES


                                              PARTNERS ONLINE
         Home Niches and Target Are Parties   AGREEMENT
         to the Partners Online Agreement   • Home Niches agreed to indemnify
                                              Target for tort liability arising out
                                              of Target's sale of Home Niches
                                              goods or products.

         TARGET

         Target Sold Product That Allegedly
         Injured Keon Reeves and Then Settled   UNDERLYING LAWSUIT
         Reeves' Tort Claim in Underlying Lawsuit   SETTLEMENT
                                            • Target pays damages to settle
                                              claim


         KEON REEVES
         (Injured Party in Underlying Lawsuit)
```

Target seeks coverage under the Policy for settlement amount in Underlying Lawsuit

10

II

A movant is entitled to summary judgment when it "shows that there is no genuine dispute as to any material fact . . . ." *SEC v. Sierra Brokerage Servs., Inc.,* 712 F.3d 321, 326-27 (6th Cir. 2013) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251-52 (1986)) (quotations omitted). When reviewing the record, "the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Id.* "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for [that party]." *Anderson,* 477 U.S. at 252. Summary judgment is not appropriate when "the evidence presents a sufficient disagreement to require submission to a jury." *Id.* at 251-52. Indeed, "[c]redibility determinations, the weighing of the evidence, and the drafting of legitimate inferences from the facts are jury functions, not those of a judge . . . ." *Id.* at 255.

III

The Court's analysis of whether the Partners Online Agreement and the Assumption Agreement constitute an "insured contract" under the Policy is guided by certain settled rules of Michigan contract and insurance law. To begin, under Michigan law, "insurance policies are subject to the same contract construction principles that apply to any other species of contract." *Rory v. Continental Ins.*

11

*Co.*, 703 N.W.2d 23, 26 (Mich. 2005). These principles require a court to "enforce the terms of [an insurance policy] as written." *Upjohn v. New Hampshire Ins. Co.*, 476 N.W.2d 392, 397 (Mich. 1991). Moreover, Michigan courts "will not hold an insurance company liable for a risk it did not assume." *Auto-Owners Ins. Co. v. Churchman*, 489 N.W.2d 432, 434 (Mich. 1991). In light of these rules, the Court must carefully scrutinize the language of the Policy.

As noted above, the Policy defines an "insured contract," in relevant part, as "[t]hat part of any other contract or agreement pertaining to your business . . . under which *you* [Walsay[3]] assume the *tort* liability of another party to pay for 'bodily injury' . . . ." (Policy, ECF #58-5 at 14, Pg. ID 1712; emphasis added.) Thus, in order to qualify as an "insured contract" under this definition, an agreement must have at least two essential features. First, Walsay must be a party to the agreement.[4] Second, Walsay must assume *tort* liability in the agreement.

Neither the Partners Online Agreement nor the Assumption Agreement satisfies these two essential elements of an "insured contract." The Partners Online

---

[3] The Policy defines "you," in relevant part, as the "Named Insured shown in the Declarations." (Policy, ECF # 58-5 at 1, Pg. ID 1699.) The relevant page from the Declarations does not appear to be in the record, but it is undisputed that Walsay is the Named Insured. Indeed, Target's filings in this action repeatedly acknowledge that Northern issued the Policy "to Walsay." (*See, e.g.*, Target's Mot. Summ. J., ECF #58 at 10, Pg. ID 1654.)

[4] Walsay could not agree to assume liability under a contract unless it is a party to that contract.

12

Agreement cannot be an "insured contract" because Walsay is not a party to that contract; it is between Home Niches and Target.

And the Assumption Agreement is not an "insured contract" because Walsay did not assume *tort* liability under that contract. Instead, in that agreement, Walsay promised to assume Home Niches' *contractual* duties to Target under the Partners Online Agreement. Indeed, the extent of Walsay's liability to Target under the Assumption Agreement depends upon the extent of Home Niches' liability to Target *under another contract* – the Partners Online Agreement – and thus Walsay did not assume *tort* liability under the Assumption Agreement.

Target resists this conclusion. Target insists that because Walsay has been adjudged liable for Target's tort liability to Neal (by the Illinois federal court), Walsay must have "assumed" that liability for purposes of the Policy's "insured contract" definition. But Target ignores the distinction between an assumption of *contractual* liability and an assumption of *tort* liability. Walsay entered into one contract with Home Niches (the Assumption Agreement) to assume Homes Niches liability under a second contract (the Partners Online Agreement). That is not the same as a direct assumption of tort liability by Walsay. And the Policy's definition of "insured contract" – referring to that part of "any other contract" (singular) – limits an "insured contract" to a *single* contract in which the insured *directly* assumes tort liability. Nothing in the Policy's definition of "insured contract"

13

suggests that Northern was willing to assume the risk of insuring Walsay against distant tort liability – i.e., tort liability that Walsay did not assume directly, but, instead, assumed through layers of contractual promises.

Because Walsay did not directly assume tort liability in the Assumption Agreement, that contract is not an "insured contract" under the Policy.  Therefore, the Contractual Liability Exclusion applies with full force to bar Target's claim for indemnification.

## CONCLUSION

For the reasons provided above, **IT IS HEREBY ORDERED** that Northern's motion for summary judgment (ECF #56) is **GRANTED** and Target's motion for summary judgment (ECF #58) is **DENIED.**

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

Dated:  August 16, 2016

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on August 16, 2016, by electronic means and/or ordinary mail.

s/Holly A. Monda
Case Manager
(313) 234-5113

14